UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GERONIMO LUCAS**, | **2:22-CV-11234-TGB-JJCG** |
| | HON. TERRENCE G. BERG |
| Petitioner, | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PETITIONER PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL** |
| vs. | |
| **MICHELLE FLOYD**, | |
| Respondent. | |

Michigan prisoner Geronimo Lucas, confined at the Newberry Correctional Facility in Newberry, Michigan, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. In his pro se petition, Lucas challenges his convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (person under age 13) in the Kent County Circuit Court.

For the reasons stated below, the Court denies the petition, denies a certificate of appealability, and denies Lucas leave to proceed in forma pauperis on appeal.

# I.   BACKGROUND

Lucas's convictions arose from the repeated sexual assault of a minor child under the age of 13 who lived with him and his family from 2014 to 2016. Lucas was tried by bench trial and convicted in the Kent County Circuit Court.[1] This Court recites the facts from the Michigan Court of Appeals' opinion affirming Lucas's conviction, presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> The victim testified that Lucas put his private parts into her rear end and in her front private part, causing her pain and bleeding. The forensic interviewer testified that the victim told her that Lucas put his penis in her back and her front more than ten times. The trial court credited this testimony, which was sufficient for a rational trier of fact to find beyond a reasonable doubt that Lucas sexually penetrated the victim.
>
> In addition, the testimony of the victim's older sister supported the trial court's finding of guilt. She testified that Lucas called her and offered her money not to cooperate with the investigation after he became aware of the police investigation into the victim's allegations. The victim's older sister, who was 23 years old at the time of trial, testified that Lucas had also sexually assaulted her when she was

---

[1] The trial court consolidated Lucas's criminal cases: 16-011299-FC and 16-11300-FH. Lucas was initially charged with two counts of first-degree criminal sexual conduct in case 16-011299-FC and two counts second-degree criminal sexual conduct in 16-11300-FH. The cases involved separate victims. The trial court found Lucas not guilty of the two counts of second-degree criminal sexual conduct in 16-11300-FH.

younger. Although the trial court could not find beyond a reasonable doubt that the victim's older sister was under 13 years old when the assault occurred, the trial court credited her testimony that Lucas touched her inappropriately.

*People v. Lucas*, No. 339389, 2018 WL 4927102, at *1 (Mich. Ct. App. Oct. 9, 2018).

On May 10, 2017, the trial court found Lucas guilty of two counts first-degree criminal sexual conduct. ECF No. 13-4, PageID.310. On June 8, 2017, the trial court sentenced Lucas to 10 to 30 years' imprisonment. ECF No. 13-5, PageID.324.

Lucas filed a direct appeal with the Michigan Court of Appeals, arguing that the prosecution failed to present sufficient evidence to convict him of first-degree criminal sexual conduct and that the prosecutor improperly asked leading questions and vouched for witness credibility. On October 9, 2018, the Michigan Court of Appeals issued an unpublished opinion affirming Lucas's convictions and sentence. *See Lucas*, 2018 WL 4927102, at *3.

Lucas then filed an application for leave to appeal in the Michigan Supreme Court. On May 29, 2019, that court denied the application for leave. *People v. Lucas*, 503 Mich. 1040, 927 N.W.2d 259 (2019).

On January 9, 2020, Lucas filed a motion for relief from judgment in the trial court. *See* ECF No. 13-6. Lucas raised claims concerning trial counsel's (1) failure to object to the admission of the victim's out-of-court-statements, (2) failure to impeach witnesses with their

inconsistent statements, (3) failure to subpoena the victim's medical report, and (4) ineffective assistance of appellate counsel for failing to raise meritorious issues on appeal. *Id*. at PageID.328.

On June 19, 2020, the trial court denied the Lucas's motion for relief from judgment, finding that Lucas failed to show good cause for failing to raise the issues in his direct appeal and/or actual prejudice under Michigan Court Rule 6.508(D)(3). *See* ECF No. 13-7. Lucas filed an application for leave to appeal that decision in the Michigan Court of Appeals, which was denied on March 12, 2021 because Lucas "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 13-13. On November 2, 2021, the Michigan Supreme Court denied Lucas's application for leave to appeal that decision because "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lucas*, 508 Mich. 968, 965 N.W.2d 527 (2021).

On December 3, 2021, Lucas filed a second motion for relief from judgment  in the trial court based on newly discovered evidence. ECF No. 13-8. Lucas procured and attached nine affidavits to the motion, including one from the victim's mother, which he claimed supported his actual innocence. He further sought to compel the State's production of the victim's medical report, which he claimed would also establish his innocence. *See id.*

4

On January 31, 2022, the trial court denied the motion. The court concluded that the affidavits did not constitute newly discovered evidence because the affiants were discovered prior to filing the motion. *See* ECF No. 13-9. Moreover, the court found that the affiants merely reiterated testimony presented at trial. *Id*. at PageID.432. The trial court further determined that because the affidavit from the victim's mother did not comply with the Michigan Court Rules, the court could not consider it. *Id*. at PageID.433. Lucas did not appeal the trial court's ruling.

Instead, Lucas filed his third motion for relief from judgment with the trial court on March 14, 2022. ECF No. 13-10. In that motion, Lucas moved for relief on the basis that he provided a notarized affidavit from the victim's mother which stated that she believed her daughter lied about the abuse so that she could live with her sister. *Id*. On April 5, 2022, the trial court denied the motion because the affidavit did not constitute new evidence, nor did it change the outcome of the judgment. ECF No. 13-11, PageID.446. Lucas did not appeal the trial court's order.

Lucas then filed the present habeas petition seeking relief on the following grounds:

I.      Ineffective assistance of trial counsel.

II.     Prosecutorial misconduct.

III.    Insufficient evidence of first-degree criminal sexual conduct.

IV.    Ineffective assistance of appellate counsel.

ECF No. 1.

Respondent filed an answer contending that Lucas's ineffective assistance of trial counsel and prosecutorial misconduct claims are procedurally defaulted and that all the claims lack merit. ECF No. 12. Lucas filed a reply contending that he is entitled to habeas relief. ECF No. 14.

## II.    LEGAL STANDARD

Section 2254 of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## III.   DISCUSSION

### A.   Procedural Default

Respondent contends that Lucas's ineffective assistance of trial counsel and prosecutorial misconduct claims are barred by procedural default. The Court declines to address that defense as it is not a jurisdictional bar to review of the merits. *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. Accordingly, the Court will proceed to the merits of Lucas's claims.

### B.   Ineffective Assistance of Trial Counsel

Lucas argues that trial counsel was ineffective by (1) failing to conduct a pre-trial investigation of all the facts, which prejudiced the case during "critical stages." (2) failing to thoroughly cross-examine and impeach witnesses, (3) failing to investigate and call all possible defense witnesses, (4) failing to object to out-of-court statements, and (5) failing

8

subpoena the victim's medical report. Lucas presented claims two, four, and five of his ineffective assistance of counsel arguments for the first time in his motion for relief from judgment. The state trial court rejected the arguments based on Lucas's failure to show good cause and actual prejudice for failing to raise them in his appeal of right. ECF No. 13-7. Although the state court judge procedurally defaulted the claims pursuant to Mich. Ct. R. 6.508(D)(3), he also denied the post-conviction claims on the merits. Thus, the AEDPA's deferential standard of review applies to his opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).

To prevail on his ineffective assistance of counsel claims, a habeas petitioner normally must show that the state court's conclusion failed to properly apply the Supreme Court's precedent on ineffective assistance of counsel, which is *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance actually prejudiced the defense. *See Strickland*, 466 U.S. at 687. This standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

If there is a complete denial of counsel during a critical stage of a judicial proceeding, in the *Cronic* case the Supreme Court clearly held

that such a denial mandates a presumption of prejudice. *See United States v. Cronic*, 466 U.S. 648, 659 (1984); *see also Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993) (noting that the existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process). The Supreme Court identified three situations where a defendant is entitled to this presumption: (1) the complete denial of counsel, including situations where counsel was absent at a critical stage of the proceedings; (2) situations where defense counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) situations where the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate. *See Fuller v. Sherry*, 405 F. App'x 980, 985 (6th Cir. 2010) (citing *Cronic*, 466 U.S. at 659-60). Thus, the Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceedings. *See Cronic*, 466 U.S. at 659, n.25; *see also United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992).

### 1. Denial of Counsel at Critical Stages

Lucas initially asserts that he was denied counsel during a critical stage of the proceedings because of counsel's failure to conduct a reasonable investigation and make strategic decisions. ECF No. 1, PageID.3, 8, 14–15. Lucas did not raise a *Cronic* claim before the state courts; therefore, the Court will review this claim de novo.

Lucas does not really contend that he had no counsel; he says that his counsel's performance was so poor it was as if he had no counsel. The law calls this a "constructive" denial of counsel. But Lucas fails to show that trial counsel's actions constituted a constructive denial of counsel at a critical stage of the proceedings under any of the three circumstances where prejudice is presumed under *Cronic*. It is evident from the state-court record that Lucas's counsel was physically and mentally present during the trial, advocated arguments on Lucas's behalf, investigated witnesses, called witnesses in his defense, and cross-examined the State's witnesses. Nothing in the record suggests that counsel was absent during a critical stage of the proceedings such that the presumed prejudice standard under *Cronic* would apply.

Because Lucas fails to show that the *Cronic* analysis applies, the Court now analyzes each of his ineffective assistance claims under the two-pronged *Strickland* standard, which "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110.

11

### 2. Failure to Adequately Impeach Witnesses

Lucas argues that trial counsel was ineffective for failing to properly impeach—or attack the credibility of—the victim and the victim's sister, Chica, on cross-examination. Specifically, Lucas argues that counsel failed to use the victim's prior inconsistent statements for impeachment purposes and failed to adequately confront Chica with her prior inconsistent and conflicting statements. ECF No. 1, PageID.2–9, 13. The trial court considered and rejected both arguments, concluding that they lacked merit. ECF No. 13-7, PageID.372-73, 374-75.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Lucas contends that trial counsel should have impeached the victim with her conflicting statements in the forensic report regarding the (1) time of alleged assaults, (2) claim that she saw Lucas's penis, (3) the first time the sexual assault occurred, and (4) her reasoning for wanting to live with Chica. Lucas further contends that counsel should have impeached Chica with her conflicting statements in the police report regarding her age, Lucas's offer for money not to cooperate with

the police, her mother's knowledge of the sexual assaults, statements that Lucas would take her to bible study, as well as various others.

The Court's review of the state-court records reveals that counsel thoroughly cross-examined both the victim and Chica. Counsel addressed inconsistencies in the victim's testimony regarding the time of day the alleged assaults occurred, whether she had seen Lucas's penis, and whether he ejaculated, which differed from her statements in the forensic interview. Counsel further explored both witnesses' motivations to lie about the sexual abuse. ECF No. 13-3, PageID.252–253, 256, 260. Defense counsel also called four witnesses, Lucas's daughters, wife, and sister-in-law, who testified that the victim's and Chica's statements regarding the sexual abuse were untruthful. And during closing argument, Counsel again addressed the various inconsistencies in the victim's and Chica's testimony. *Id.* at PageID.273–282, 287–288.

Although Lucas contends that counsel should have been more thorough in pointing out inconsistencies in the witnesses' statements and testimony, the mere fact that other avenues of impeachment may have existed does not render counsel ineffective; counsel need not "develop every bit of testimony through all available inconsistent statements." *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment

information on cross-examination). Pointing out each and every inconsistency in the witnesses' statements would not necessarily have succeeded in undermining their testimony and could have had the unintended effect of annoying or over-burdening the fact-finder with insignificant minutia. In light of the great deference given to counsel's judgment in matters of cross-examination and impeachment, Lucas fails to show that his trial counsel's performance was deficient. Therefore, Lucas is not entitled to relief on this claim.

### 3. Failure to Investigate and Call Certain Witnesses

Lucas next argues that counsel failed to further investigate and call all witnesses in his defense. ECF No. 1, PageID.5. Lucas did not present this argument to the state courts; therefore, the Court will review the argument de novo.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning … guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 481. Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of

trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

In this case, defense counsel clearly investigated and called four witnesses in Lucas's defense, each testifying that the victim's statements about the abuse were untruthful and vouching for Lucas's good character. However, Lucas maintains that counsel should have investigated and called additional witnesses. For instance, Lucas argues that counsel should have investigated a possible alibi witness when the facts showed that where he was living had been fabricated. ECF No. 1, PageID.5. Lucas however does not identify any alibi witnesses or attach an affidavit from any individual who would have provided exculpatory testimony, and a habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been helpful to his defense. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits or any

other evidence establishing what [potential witnesses] would have said…. In the absence of any evidence showing that they would have offered specific favorable testimony, [Petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."). Therefore, Lucas cannot show prejudice for this claimed failure.

Lucas does, however, attach nine affidavits from friends, family, and the victim's mother, each averring that they believed the victim and Chica falsified the sexual abuse allegations and attesting to Lucas's good character. To the extent that Lucas argues that these witnesses should have been called at trial, the affidavits do not show that defense counsel acted unreasonably or that calling these additional witnesses would have resulted in a different outcome. Importantly, the affidavits do not introduce any new information. The affidavits contain statements similar to the testimony provided by the four defense witnesses—even the victim's mother's affidavit which states that she believes her daughters "made up" the abuse so that the victim and Chica could live together. ECF No. 14, PageID.759. Because calling these individuals would be cumulative, that is, they would add nothing new, of the other witnesses presented in his defense, Lucas cannot show that his counsel's actions were an unreasonable strategy or prejudiced the trial. Therefore, Lucas fails to show that he was prejudiced or deprived of a substantial defense as a result of counsel's performance.

16

### 4. Failure to Object to Victim's Out-of-Court Statements

Lucas next asserts that his trial counsel was ineffective for failing to object to the admission of the victim's out-of-court statements during a forensic interview. The trial court concluded that the statements were arguably admissible under Michigan Rule of Evidence 803(4) (statements made for purposes of medical treatment or diagnosis) and that their admission did not substantially affect Lucas's rights. ECF No. 13-7, PageID.372.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the state trial court determined that this evidence was admitted for a proper non-hearsay purpose under Michigan law, this Court must defer to that determination in resolving Lucas's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437–38 (6th Cir. 2008). Because these out-of-court statements were deemed admissible for non-hearsay purposes, trial counsel was not ineffective for failing to object to their admission. *See Flood v. Phillips*, 90 F. App'x. 108, 119 (6th Cir. 2004). Further, in his bench opinion, the trial judge found the victim's testimony highly credible, regardless of the victim's out-of-court statements in the forensic interview, and thus Lucas fails to show that

the lack of an objection to the victim's out-of-court statement resulted in prejudicial error.

### 5. Failure to Subpoena Victim's Medical Records

Finally, Lucas argues that trial counsel was ineffective for failing to subpoena the victim's medical report. ECF No. 1, PageID.13. The trial court rejected this argument as well, concluding that Lucas failed to present any evidence establishing what the medical report might have shown. ECF No. 13-7, PageID.373.

The Court agrees. Lucas has not established that trial counsel's actions were objectively unreasonable or that he was prejudiced by counsel's failure to obtain the medical report. Lucas has not shown what additional medical information was available, relevant, or admissible. Lucas merely speculates, and provides no actual evidence, as to what the medical records might show. Moreover, he fails to explain how the medical report would have changed the outcome of the trial, particularly in light of the victim's testimony describing the sexual assaults. Conclusory allegations are insufficient to demonstrate that trial counsel was ineffective. *See Cross v. Stovall*, 238 F. App'x 32, 39 (6th Cir. 2007) (finding petitioner's "ineffective assistance of counsel claim … doomed by the fact that she makes nothing more than conclusory assertions"); *Dell*, 194 F. Supp. 2d at 650 ("Mere conclusory allegations in support of [habeas] claims … are insufficient, as a matter

of law, to raise a constitutional issue."). Accordingly, Lucas is not entitled to habeas relief on this claim.

## C. Prosecutorial Misconduct

Lucas next asserts that the prosecutor committed misconduct by using leading questions during the victim's direct examination and vouching for the victim's credibility during closing argument. Because defense counsel failed to lodge contemporaneous objections to the challenged conduct during trial, the Michigan Court of Appeals reviewed the prosecutorial misconduct claim under a plain-error standard. AEDPA's deferential standard of review applies to a state court's plain-error analysis of a defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The Michigan Court of Appeals considered and further rejected both of Lucas's arguments, stating that:

> The use of leading questions during direct examination is generally prohibited, "except as may be necessary to develop the witness' testimony." MRE 611(d)(1). Trial courts may give the prosecution "a considerable amount of leeway . . . to ask leading questions of child witnesses." *People v. Watson*, 245 Mich. App. 572, 587; 629 N.W.2d 411 (2001). For this reason, this Court rejected a claim of prosecutorial misconduct when the prosecution asked a leading question of a 13-year-old witness to develop her testimony. *Id*. In this case, the victim initially testified, without prompting, that Lucas touched her private parts. Further, the victim was 12 years old, she had limited English fluency, and she required the assistance of a translator to testify. Therefore, the

prosecution reasonably used leading questions to develop the victim's testimony.

We also reject Lucas's argument that the prosecution improperly vouched for the victim's credibility during its closing argument. Although the prosecution may not imply special knowledge of a witness's truthfulness, the prosecution may argue that its witnesses are credible, "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v. Thomas*, 260 Mich. App. 450, 455; 678 N.W.2d 631 (2004). Moreover, in a bench trial, a "judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v. Taylor*, 245 Mich. App. 293, 305; 628 N.W.2d 55 (2001) (quotation marks and citation omitted). In this case, the prosecution argued that the victim lacked the guile and wit necessary to fabricate her accusations against Lucas. The prosecution did not claim to have special knowledge about the victim's truthfulness. In addition, the trial court observed the victim's testimony and could determine for itself whether the victim might have fabricated the allegations. In conclusion, viewed in the light most favorable to the prosecution, we conclude that a rational trier of fact could find beyond a reasonable doubt that Lucas sexually penetrated the victim.

*Lucas*, 2018 WL 4927102, at *2-3.

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or contrary to clearly established Supreme Court precedent. A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

20

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* (punctuation modified). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (punctuation modified).

The *Darden* standard "is a very general one, leaving courts 'more leeway … in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough*, 541 U.S. at 664). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites … other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart,* 867 F.3d at 638–639 (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

First, with respect to Lucas's claim that the prosecutor denied him a fair trial by asking the victim leading questions, he fails to show that he is entitled to habeas relief. "It is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court." *United States v. Pugh*, 404 F. App'x 21, 28 (6th Cir. 2010) (citing *United States v. Shoupe*, 548

F.2d 636, 641 (6th Cir. 1977)). Courts permit leading questions to vulnerable witnesses, such as "a child sexual abuse victim," *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) (citations omitted), and in cases where the witness testifies through a translator, *see, e.g., United States v. Ajmal*, 67 F.3d 12, 15–16 (2d Cir. 1995) (holding that the Sixth Amendment permits leading questions on direct examination of a foreign witness testifying through a translator).

In this case, the prosecutor did not act improperly. The state-court record shows that the victim was 12 years old at the time of trial and that prior to the prosecutor's use of leading questions, the victim testified that Lucas touched her "in her private parts." ECF No. 13-3, PageID.249. Due to the sensitive nature of the crime and the age of the victim, it was appropriate for the trial court to allow the prosecutor to ask leading questions to further develop the victim's testimony. *See Jordan*, 397 F.3d at 363. Moreover, the state-court record shows that the victim testified with the assistance of a translator. ECF No. 13-3, PageID.248. Because leading questions were permitted under the circumstances, Lucas cannot show that the prosecutor's conduct rendered the entire trial fundamentally unfair.

Second, Lucas fails to show that the prosecutor's closing remark that the victim "[didn't] have the wit or the guile" to lie about the sexual abuse constituted improper vouching. ECF No. 1, PageID.11; ECF No. 13-3, PageID.286. "'Improper vouching occurs when a prosecutor

supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [government] behind that witness.'" *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). "Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis*, 170 F.3d at 550 (internal citations omitted). But a prosecutor is free to explore a witness's motive for testifying. *See Rector v. Wolfe*, 499 F. App'x 532, 536 (6th Cir. 2012). A prosecutor does not engage in vouching by arguing that the witnesses testified truthfully when the arguments are based on the evidence and do not reflect a personal belief of the prosecutor. *See Cockream v. Jones*, 382 F. App'x 479, 484-85 (6th Cir. 2010).

Here, the prosecutor did not improperly vouch for the victim's credibility. The prosecutor did not make "blunt comments" or imply that she had "special knowledge of facts not in front of the jury." *See Francis*, 170 F.3d at 550. Rather, the comment about the victim's lack of wit or guile was drawn from the evidence presented during trial, including the victim's demeanor, testimony, and the testimony of other witnesses, which the trial court observed. There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew

from anything but [the victim's] trial testimony to argue that [she was] credible." *Cockream*, 382 F. App'x at 485. Thus, the prosecutor's conduct did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. The state appellate court's holding that no reversible prosecutorial misconduct occurred was not contrary to, or an unreasonable application of, Supreme Court precedent. Lucas therefore is not entitled to habeas relief on this claim.

### D.    Sufficiency of the Evidence

Lucas next argues that the prosecution presented insufficient evidence to convict him of first degree criminal sexual conduct. ECF No. 1, PageID.19–73. The Michigan Court of Appeals rejected this claim and concluded that all elements of the charged offense were met. The court determined that the victim's testimony stating that "Lucas put his private parts into her rear end and in her front private part, causing her pain and bleeding" was sufficient to establish that Lucas sexually penetrated the victim. *Lucas*, 2018 WL 4927102, at *1. Lucas did not dispute that the victim was under the age of 13. *Id*. at *1, n. 1.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In a habeas corpus proceeding, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

The elements of first-degree criminal sexual conduct which apply to Lucas' case are (1), the defendant engaged in sexual penetration, and (2), with a person under 13 years of age. *People v. Duenaz*, 306 Mich. App. 85, 106, 854 N.W.2d 531, 545 (2014) (citing Mich. Comp. Laws § 750.520b(1)(a)). "'[P]enetration' is *any* intrusion, however slight, into the vagina or the labia majora." *People v. Lockett*, 295 Mich. App. 165,

188, 814 N.W.2d 295, 307 (2012) (citing Mich. Comp. Laws § 750.520a(r)) (other citation omitted) (emphasis in original).

The Michigan Court of Appeals' rejection of the claim was not unreasonable and therefore precludes habeas relief. The evidence presented at trial, viewed in a light favorable to the prosecution, established Lucas sexually penetrated the victim on multiple occasions. The victim testified that Lucas "put his private parts on her" and placed his private parts in her rear end many times. ECF No. 13-3, PageID.249-250. She testified that she bled when Lucas engaged in these acts. *Id.* at PageID.251. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (collecting cases).

The prosecution also called additional corroborating witnesses. For instance, Chica testified that while she was living with Lucas, he "would always try to take [her] skirt off" and would "bite [her] breast." ECF No. 13-3, PageID.257. The testimony suggested that Lucas had a history of sexually assaulting minors. Additionally, Diane Siegel, a forensic interviewer employed by the Kent County Children's Assessment Center, testified that the victim informed her that Lucas sexually assaulted her on multiple occasions. *Id.* at PageID.262. Siegel further testified that the victim told her, "He put his penis in me." *Id.* at PageID.263. Based on the following testimony, a rational trier of fact

could find the elements of first-degree criminal sexual conduct satisfied beyond a reasonable doubt.

Although Lucas cites to various inconsistencies in the witnesses' testimony to support his claim, inconsistencies or discrepancies in testimony do not weigh on the Court's analysis. "Discrepancies" in a witness's testimony "are irrelevant to the sufficiency of the evidence analysis because they improperly ask us to weigh the evidence or to assess [the witness's] credibility." *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (citation omitted); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (attacks on witness credibility challenge the quality, but not the sufficiency, of the government's evidence). Accordingly, Lucas is not entitled to habeas relief on this claim.

## E.    Ineffective Assistance of Appellate Counsel

Lastly, Lucas argues that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal. ECF No. 1, PageID.14–18. Lucas raised this claim in his initial motion for relief from judgment. The trial court denied the claim on the basis that Lucas did not establish good cause for failing to raise the claims on direct appeal. ECF No. 13-7, PageID.374.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Nonetheless, court-appointed

counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

As discussed *supra*, Lucas's ineffective assistance of trial counsel claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Further, as the Supreme Court has recognized, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes*, 463 U.S. at 751–52. That is what Lucas's appellate counsel did in this case. Lucas is not entitled to relief on this claim.

## IV.   CONCLUSION

For all the above reasons, Lucas's petition for a writ of habeas corpus is **DENIED**.

The Court further finds that reasonable jurists would not debate this Court's resolution of Lucas's claims, so issuance of a certificate of appealability is also **DENIED**. *See Slack v. McDaniel*, 529 U.S. 473, 483-485 (2000).

It is **FURTHER ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

This case is **DISMISSED WITH PREJUDICE**. This is a final order that closes this case.

**SO ORDERED**.

<u>   s/Terrence G. Berg                    </u>
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  December 4, 2024